**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION**

QUENTON GALVIN AND JACOB MEISTER,

                Plaintiffs,

vs.

ILLINOIS REPUBLICAN PARTY, ILLINOIS
HOUSE REPUBLICAN ORGANIZATION,
RODERICK DROBINSKI, FRIENDS OF
ROD DROBINSKI, JAMESTOWN ASSOCIATES,
LLC, AND MAJORITY STRATEGIES, INC.

                Defendants.

Case No. No. 14 cv-10490

Hon. James Zagel

Magistrate Judge Young Kim

<u>**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**</u>

Daliah Saper
Matt Grothouse
Saper Law Offices, LLC
505 N. LaSalle Suite 350
Chicago, Illinois 60654
(312) 527-4100

**TABLE OF CONTENTS**

PAGE

BACKGROUND…………………………………………………………………………1

ARGUMENT……………………………………………………………………….…….1

I.      LEGAL STANDARD…………………………………………………………..2

II.     COUNTS I-VI SHOULD BE DISMISSED BECAUSE DEFENDANTS'
        FAIR USE OF PLAINTIFF GALVIN'S PHOTOGRAPH IS
        EXCLUDED FROM PLAINTIFF GALVIN'S EXCLUSIVE RIGHTS
        UNDER 17 U.S.C. § 107……………………………………………………....3

          A.     Purpose and Character of the Use…………………………………………4

          B.     Nature of the Copyright Work……………………………………………6

          C.     Amount and Substantiality of the Work Used……………………………7

          D.     Effect of Defendants' Use on the Market……………………………...........8

III.    COUNT VII SHOULD BE DISMISSED BECAUSE DEFENDANTS'
        FAIR USE OF PLAINTIFF GALVIN'S PHOTOGRAPH PRECLUDES
        ANY CIVIL CONSPIRACY CLAIM…………………………………………9

IV.    COUNTS VIII-XIII SHOULD BE DISMISSED BECAUSE THE
        COMMON LAW CAUSE OF ACTION FOR MISAPPROPRIATION
        OF AN INDIVIDUAL'S LIKENESS WAS SUPERSEDED BY
        THE ILLINOIS RIGHT OF PUBLICITY ACT AND, AS SUCH, IS
        NO LONGER A VIABLE CAUSE OF ACTION…………………………………10

V.     COUNTS XIV-XIX SHOULD BE DISMISSED BECAUSE
        DEFENDANTS' FLYER DID NOT PORTRAY PLAINTIFF
        MEISTER IN A FALSE LIGHT, DEFENDANTS' PORTRAYAL
        OF PLAINTIFF MEISTER WAS NOT "HIGHLY
        OFFENSIVE TO A REASONABLE PERSON," DEFENDANTS
        DID NOT ACT WITH ACTUAL MALICE, AND PLAINTIFF
        MESITER DID NOT PLEAD SPECIAL DAMAGES……………..………………11

VI.    COUNT XX-XXV SHOULD BE DISMISSED BECAUSE
        DEFENDANTS' "STATEMENT" ABOUT SAM YINGLING
        (OR PLAINTIFF MEISTER) IN THE FLYER AT ISSUE WAS
        NOT DEFAMATORY, WAS CLEARY OPINION, WAS NOT
        MADE WITHOUT ACTUAL MALICE, AND DID NOT
        PRODUCE SPECIAL DAMAGES…………………………………………....15

     A.       No Plausible Statement in Defendants' Flyer is Defamatory……………...……15

     B.       Defendants' Statement is Merely Opinion…..........................................16

     C.       Defendants Lacked Actual Malice……………………………………………20

     D.       Plaintiff Meister Failed to Plead Special Damages………………………………21

VII.    COUNT XXVI SHOULD BE DISMISSED FOR THE SAME
        REASONS COUNTS XX-XXV SHOULD   BE DISMISSED—
        THERE WAS NO OFFENSE FOR   DEFENDANTS TO ALLEGEDLY
        CONSPIRE TO COMMIT…………………………………………………………25

CONCLUSION…………………………………………………………………………26

| CASES | PAGE |
|---|---|

*Gibson v. City of Chicago*,
910 F.2d 1510 (7th Cir. 1990)…………………………………………………………2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)……………………………………………………………………3

*Ashcroft v. Aqbal*,
556 U.S. 662 (2009)……………………………………………………………………3

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009)…………………………………………………………...3

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 US 417 (1984)…………………………………………………………………...3, 7

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985)…………………………………………………………………4, 6

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir.2012)………………………………………………………… 4

*Cariou v. Prince*,
714 F.3d 694 (2nd Cir.2013)……………………………………………………………5

*Kienitz v. Sconnie Nation LLC*,
965 F. Supp. 2d 1042 (W.D. Wis. 2013) *aff'd*, 766 F.3d 756 (7th Cir. 2014)……………….5, 7, 8

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)…………………………………………………………5, 6, 7, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)……………………………………………………………………6

*Fitzgerald v. CBS Broadcasting, Inc.*,
491 F.Supp.2d 177 (D.Mass.2007)…………………………………………………..7

*Chicago Board of Educ. v. Substance, Inc.*,
354 F.3d 624 (7th Cir. 2003)………………………………………………………...7

*Ty, Inc. v. Publications International Ltd.*,
292 F.3d 512 (7th Cir.2002)…………………………………………………………8

*Denison v. Larkin*,
No. 1:14-cv-01470, 2014 WL 3953637 (N.D. Ill. Aug. 13, 2014)……………………………….9

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008)…………………………………………………………………...9

*Fritz v. Johnston*,
209 Ill. 2d 302 (2004)………………………………………………………………..9, 10, 25

*Indeck N. Am. Power Fund, L.P. v. Norweb PLC*,
316 Ill. App. 3d 416 (2000)………………………………………………………….9, 10, 25

*Boothe v. Sherman*,
No. 13 C 7228, 2014 WL 4362842 (N.D. Ill. Sept. 3, 2014)………………………………...10, 25

*Adcock v. Brakegate, Ltd.*,
164 Ill.2d 54 (1994)……………………………………………………………………10, 25

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012)…………………………………………………………...10, 25

*Maremont v. Susan Fredman Design Grp., Ltd.*,
772 F. Supp. 2d 967 (N.D. Ill. 2011)…………………………………………………………10

*Wynne v. Loyola Univ. of Chi.*,
318 Ill. App. 3d 443 (1st Dist. 2000)…………………………………………………………11

*Kolegas v. Heftel Broad. Corp.*,
154 Ill. 2d 1 (1992)……………………………………………………..11, 16, 22, 23

*Muzikowski v. Paramount Pictures Corp.*,
322 F.3d 918 (7th Cir. 2003)…………………………………………………...11, 12, 14, 24

*Harte v. Chicago Council of Lawyers*,
220 Ill.App.3d 255 (1991)…………………………………………………………………11

*McCullough v. Zimmer, Inc.*,
No. 08cv1123, 2009 U.S. Dist. LEXIS 21815 (W.D. Penn. March 18, 2009)…………………..12

*In re Delorian Motor Co.*,
991 F.2d 1236 (6th Cir. 1993)…………………………………………………………....12

*Chapski v. Copley Press*,
92 Ill. 2d 344 (1982)………………………………………………………………………..13

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995)……………………………………………………………...13

*Myers v. Levy*,
348 Ill. App. 3d 906 (2004)………………………………………………...14

*Lovgren v. Citizens First Nat'l Bank*,
126 Ill. 2d 411 (1989)………………………………………………………14

*Stone v. Paddock Publications, Inc.*,
2011 IL App (1st) 093386……………………………………………………15

*Madison v. Frazier*,
539 F.3d 646 (7th Cir. 2008)………………………………………….....15, 20, 21

*Bryson v. News America Publications, Inc.*,
174 Ill.2d 77 (Ill. 1996)…………………………………………………………15

*Maag v. Illinois Jobs, Growth and Prosperity*,
368 Ill.App.3d 844 (5th Dist. 2006)……………………………………….....15, 24

*New York Times, Co. v. Sullivan*,
376 U.S. 254 (1964)…………………………………………………....15

*J. Maki Const. Co. v. Chicago Regional Council of Carpenters*,
379 Ill.App.3d 189 (2008)……………………………………………………15

*Solaia Technology, LLC v. Specialty Pub. Co.*,
221 Ill. 2d 558 (Ill. 2006)…………………………………………………...16

*Getz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)…………………………………………………16, 17

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
227 Ill.2d 381 (2008)………………………………………………...17, 24

*Hopewell v. Vitullo*,
233 Ill.Dec. 456 (1st. Dist. 1998)……………………………………………...17

*Rose v. Hollinger International, Inc.*,
383 Ill App. 3d 8 (Ill. App. Ct. 2008)……………………………………………17

*Troy Group, Inc. v. Tilson*,
364 F.Supp.2d 1149 (C.D.Cal.2005)…………………………………………18

*Coghlan v. Beck*,
2013 IL App (1st) 120891……………………………………………………………..18

*Phantom Touring, Inc. v. Affiliated Publications*,
953 F.2d 724 (1st Cir.1992)…………………………………………………………...18

*Brennan v. Kadner*,
351 Ill.App.3d 963 (Ill. App. Ct. 2004)……………………………………...……18, 19

*Quinn v. Jewel Food Stores, Inc.*,
276 Ill. App. 3d 861 (Ill. App. Ct. 1995)……………………………………………...18

*Gregory v. McDonnell Douglas Corp.,*
17 Cal.3d 596 (1976)………………………………………………………………….19

*Seith v. Chicago Sun-Times, Inc.,*
371 Ill. App. 3d 124 (2007)…………………………………………………………...19

*Greenbelt Cooperative Publishing Ass'n v. Bresler*,
398 U.S. 6, 13–14 (1970)……………………………………………………………...19

*Tuite v. Corbitt*,
224 Ill. 2d 490 (2006)………………………………………………………………….21

*Green v. Rogers*,
234 Ill.2d 478 (2009)………………………………………………………….……….22

*Naleway v. Agnich*,
386 Ill.App.3d 635 (2nd Dist. 2008)………………………………………………...…24

**STATUTES**

17 U.S.C. § 107………………………………………………………………………..*passim*

765 ILCS 1075/60…………………………………………………………….………..10

765 ILCS 1075*I*35(b)(2)………………………………………………………………10

**RULES**

Fed. R. Civ. P. 12(b)(6)………………………………………………………………….2

Fed. R. Civ. P. 8(a)……………………………………………………………………..2

**OTHER AUTHORITIES**

¶ 26,945 Nordstrom, Inc., Et Al. V. Paran (People Against Racism And Nordstrom)

Et Al., 1992 WL 12610761……………………………………………………………………….6

Doc. No. 108, Order Granting SBA List's Renewed Motion for Summary Judgment………….13

Defendants the Illinois Republican Party ("The IRP"), the Illinois House Republican Organization ("The IHRO"), Roderick Drobinski ('Drobinski"), Friends of Rod Drobinski ('Friends"), and Majority Strategies, Inc. ("Majority"), by and through their attorneys, and in Support of their Motion to Dismiss, state as follows:

## BACKGROUND

In October of 2014, Defendants mailed to several potential voters an 8.5" x 17" political flyer critiquing Sam Yingling, a Democratic member of the Illinois House of Representatives who was running for re-election. The flyer depicts a man in a car at a parade under the words ". . . and Fiscal Responsibility Went Out the Window" and "Career Politician Sam Yingling in the Driver's Seat As Illinois Speeds Towards Higher Taxes, More Wasteful Spending, and More Jobs Lost." *See* Pl.'s Ex. B.

To create the political flyer, Defendants used a photograph from Sam Yingling's website, in a section promoting a pro-Sam Yingling parade. Inadvertently, however, the image selected was not of Sam Yingling; it was Democratic politician and Jacob Meister. Meister attended the Yingling parade and rode in a Sam Yingling-marked car as part of the parade caravan. The gentlemen look striking similar: both are middle-aged white males with short hair, angular noses, and glasses. Indeed, Defendants were not aware of the mistake until Plaintiff Meister's lawyer sent them a cease and desist letter—well after the flyer was disseminated.

## ARGUMENT

The Court should dismiss Plaintiffs' Complaint in its entirety for failure to state any claim upon which relief can be granted. Specifically, Counts I-VI for Copyright Infringement should be dismissed because Defendants' use of Plaintiff Galvin's photograph was used for criticism and commentary and clearly constitutes a fair use under 17 U.S.C. § 107. Similarly,

Counts VII for Civil Conspiracy should be dismissed because Defendants did not infringe nor conspire to infringe on Defendant Galvin's copyright but merely collaborated to make a critical (even if erroneous) political commentary and critique. In addition and in the alternative, Defendant Galvin did not plead his conspiracy claim with sufficient specificity. Counts VIII-XIII for Appropriation of Image should be dismissed because the common law cause of action for misappropriation of an individual's likeness was superseded by the Illinois Right of Publicity Act and as such is no longer a viable cause of action. Counts XIV-XIX for False Light should be dismissed because Defendants' flyer did not portray Plaintiff Meister in a false light, Defendants' portrayal of Plaintiff Meister was not "highly offensive to a reasonable person," and Defendants did not act with actual malice. In addition and in the alternative, Counts XIV-XIX should be dismissed because Plaintiff Meister failed to plead special damages for his false light claims as required by law. Counts XX-XXV for Defamation should be dismissed because Defendants' "statement" about Sam Yingling (or Plaintiff Meister) in the flyer at issue was not defamatory, was clearly opinion, was not made with actual malice, and did not produce special damages. Lastly, Count XXVI should be dismissed for the same reasons why Counts XX-XXV should be dismissed—there was no offense Defendants could allegedly conspire to commit. In addition and in the alternative, Defendant Meister did not plead his conspiracy claim with sufficient specificity.

## I.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the claims must first comply with the Fed. R. Civ. P. 8(a) by providing a short and plain statement of the claim showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), such that the

defendants are given "fair notice of what . . . claim is and the ground upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the plaintiff must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, the plaintiff must plead enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a plaintiff need not plead facts in the complaint to defeat potential affirmative defenses, where "the allegations of the complaint itself set forth everything to satisfy [an] affirmative defense," the plaintiff essentially pleads himself out of court. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); *see also Hecker v. Deere & Co.,* 556 F.3d 575, 588 (7th Cir.2009).

## II. COUNTS I-VI SHOULD BE DISMISSED BECAUSE DEFENDANTS' FAIR USE OF PLAINTIFF GALVIN'S PHOTOGRAPH IS EXCLUDED FROM PLAINTIFF GALVIN'S EXCLUSIVE RIGHTS UNDER 17 U.S.C. § 107.

Plaintiff Galvin cannot assert rights he does not have. Assuming without conceding that Plaintiff Galvin owns the copyright to the photograph at issue, such copyright protection only extends to those *limited* uses defined by the Copyright Act. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 US 417, 432 (1984) (stating that copyright protection "has never accorded the copyright owner complete control over all possible uses of his work."). Beyond that, Plaintiff Galvin has no rights and can assert no claim. *See* 17 U.S.C. § 107 (entitled "*Limitations* on exclusive rights") (emphasis added). 17 U.S.C. § 107 makes it clear that copyright protection does not extend to "fair uses" as defined by that Section of the Copyright Act. *See Sony*, 464 US at 432 ("All reproductions of the work . . . are not within the exclusive domain of the copyright owner . . . any individual may reproduce a copyrighted work for a 'fair use'; the copyright owner does not possess the exclusive right to such a use.").

The Copyright Act sets forth four, non-exclusive factors that a court must consider in determining whether a particular use of a copyrighted work is a fair use: "(1) the purpose and character of the use . . . ; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107 (2012).

As explained in more detail below, Defendants' use of only a portion of Plaintiff Galvin's photograph, super-imposed with words criticizing politician and public figure Sam Yingling, in a non-commercial flyer, for obvious political criticism and commentary, constitutes a "fair use" as defined by 17 U.S.C. § 107. Plaintiff Galvin has no rights to preclude such use and can assert no claim based on such use. COUNTS I-VI, therefore, should be dismissed with prejudice.

A.      Purpose and Character of the Use

The first fair use factor the Court considers is the "purpose and character of the use, including whether such use is of a commercial nature." 17 U.S.C. § 107(1). The main inquiry of this factor is determining whether the new work supersedes the objects of the original or adds something new. *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 562 (1985). *See also Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 693 (7th Cir.2012) ("Central to determining the purpose and character of a work is whether the new work merely supersedes the original work, or instead adds something new with a further purpose or of a different character.").

The purpose and character of Defendants' use of Plaintiff Galvin's work is wholly unrelated to and altogether different from the purpose of the original photograph. The purpose of the Plaintiff Galvin's photograph was to record Plaintiff Meister's participation in a Sam

Yingling political parade. Simply put, the photograph was a factual documentation of a public event. In contrast, the purpose of Defendants' political flyer, in which part of Plaintiff Galvin's photograph was incorporated, was to comment on and criticize Sam Yingling's policies. Specifically, Plaintiff Galvin's work was incorporated into Defendants' flyer in order to illustrate and emphasize Sam Yingling's fiscal irresponsibility. This is clearly a political commentary and criticism: the flyer colorfully expresses, with the usual rhetorical flare of political speech, Sam Yingling's fiscal recklessness.

This form of fair use is explicitly recognized in the Copyright Act. *See* 17 U.S.C. § 107 ("[T]he fair use of a copyrighted work, including such use by reproduction in copies . . . for purposes such as criticism, comment . . . is not an infringement of copyright."). *Cariou v. Prince,* 714 F.3d 694, 706-07 (2nd Cir.2013) (paintings incorporating copyrighted photographs were transformative because paintings had different character, manifested entirely different aesthetic and gave photographs new expression); *Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042, 1050 (W.D. Wis. 2013) *aff'd*, 766 F.3d 756 (7th Cir. 2014) (finding that defendants employed copyrighted photograph of mayor "for the diametric purposes of sophomoric humor and political critique.").

The nature of the political flyer, moreover, is clearly non-profit. The flyer was not sold for any money (let alone for a profit). It does not solicit campaign funds nor does it ask for monetary contributions of any kind. It does not even encourage readers to vote for a specific candidate; it just reminds them to "Vote Tuesday, November 4th." A real rarity, Defendants' political flyer is purely non-profit. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) ("[N]early all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research ... are generally

conducted for profit."). Plaintiffs' characterization of Defendants' flyer as an "advertisement," therefore, is baseless and is directly contradicted by the flyer itself. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that, upon ruling on a motion to dismiss, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

In short, Defendants' use of Plaintiff Galvin's photograph in the political flyers was for the purpose of political speech. *See* ¶ 26,945 Nordstrom, Inc., Et Al. V. Paran (People Against Racism And Nordstrom) Et Al., 1992 WL 12610761 (reporting on a case where an organization's leaflet, which contained a reproduction of a store's advertisement, constituted fair use because the leaflet merely juxtaposed the store's advertisement with facts to engage in political speech regarding racial equality). The highly transformative purpose of Defendants' use of Plaintiff Galvin's photograph, coupled with the nonprofit character of the flyer, should all but establish fair use. *See Campbell,* 510 U.S. at 579 (["T]he more transformative the new work, the less will be the significance of other factors . . . that may weigh against a finding of fair use.").

B.    Nature of the Copyright Work

The second fair use factor is the nature of the copyrighted work.  17 U.S.C. § 107(2). Courts generally consider two aspects of a copyrighted work in evaluating this factor: (1) whether the work is more creative or factual in nature, and (2) whether it is unpublished, in which case the right of first publication is implicated. *See Harper & Row,* 471 U.S. at 563–64.

Here, the photograph, as Plaintiff Galvin pointed out in his pleadings, was already published on Sam Yingling's website.  Furthermore, the photograph bears a factual nature.  It "was not an 'artistic representation . . . designed primarily to express [the photographer's] ideas,

emotions, or feelings,' but is instead a candid image taken of the [politician] at a political event."
*Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042, 1052 (W.D. Wis. 2013) *aff'd*, 766 F.3d
756 (7th Cir. 2014). Because the underlying photograph is more of a factual rather than creative
work, this factor supports a finding of fair use. *See also Fitzgerald v. CBS Broadcasting,
Inc.,* 491 F.Supp.2d 177, 188 (D.Mass.2007) (finding that photograph of mobster transferred
from jail "exercised no more than the minimum authorial decision-making necessary to make a
work copyrightable").

      C.      Amount and Substantiality of the Work Used

      The third fair-use factor examines whether the portion used was "reasonable in relation to
the purpose of the copying." *Campbell*, 510 U.S. at 586. This can include very large portions,
since "there is no per se rule against copying in the name of fair use an entire copyrighted
work." *Chicago Board of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir.
2003) (citing *Sony*, 464 U.S. at 449).

      Defendants used no more than necessary of Plaintiff's Galvin's copyright photograph to
make their political commentary and criticism. The flyer characterizes Sam Yingling as a
"career politician" by stating that for some time he has been "in the driver's seat." *See* Pl.'s Ex
B. The flyer also uses the picture of the politician in the car to criticize Sam Yingling's spending
record by stating that, under Sam Yingling, "Fiscal Responsibility Went Out the Window." *See*
Pl.'s Ex B. Showing the politician driving in the car was a necessary part of Defendants'
political criticism. Therefore, this factor validates a finding of fair use because "the amount and
substantiality of the photograph used by defendants was 'reasonable in relation to the purpose of
the copying.'" *Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042, 1053 (W.D. Wis. 2013)
*aff'd*, 766 F.3d 756 (7th Cir. 2014) (quoting *Campbell,* 510 U.S. at 587–88).

D.       Effect of Defendants' Use on the Market

The fourth factor examines whether the new work will be a market substitute for the copyrighted material. *Campbell,* 510 U.S. at 591. If the new work substitutes for and is likely to reduce the demand for the copyrighted original, then it is not a fair use. *See Ty, Inc. v. Publications International Ltd.,* 292 F.3d 512, 518 (7th Cir.2002) (explaining that a book review or parody compliments and does not reduce demand for original work, whereas burlesque is merely a humorous substitute catering to humor-loving segment of the original's market).

Here, Defendants' use of Plaintiff Galvin's photograph is complimentary to the original work's commercial market because the photograph is used as part of a critical commentary of the individual believed to be in that photograph. Because there is no legitimate market in licensing "critical works," since authors do not generally intend to profit from allowing others to malign their creations, Defendants' incorporation of Plaintiff Galvin's photograph into a political flyer critical of Sam Yingling (or, by reasonable mistake, Plaintiff Meister) does not reduce the demand for Plaintiff's Galvin's documentation of Plaintiff Meister at a pro-Sam Yingling parade. *See Kienitz v. Sconnie Nation LLC*, 965 F. Supp. 2d 1042, 1054 (W.D. Wis. 2013) *aff'd*, 766 F.3d 756 (7th Cir. 2014) (finding, by merely viewing the image, that defendants' shirts were not a substitute for and did not reduce the demand for plaintiff's photographic portrait of a politician because "[a]nyone seeking a photographic portrait—or even just an accurate representative image—of the [politician] would not even consider the garish image of the [politician] splashed onto defendants' . . . shirts."). *See also Campbell*, 510 U.S. at 591 (finding that, for critical works such as parodies, "it is more likely that the new work will not affect the market for the original . . . because the parody and the original usually serve different market functions.").

All four statutory factors verify that Defendants' use of Plaintiff's photograph was a "fair use." Because Plaintiff Galvin's pleadings leave no possible outcome but a finding of fair use, there is no valid claim for copyright infringement. Accordingly, the Court should dismiss Counts I-IV of Plaintiff's Complaint with prejudice. *See Denison v. Larkin*, No. 1:14-cv-01470, 2014 WL 3953637 (N.D. Ill. Aug. 13, 2014) (granting defendant's motion to dismiss copyright claim based on a fair use); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008) (motion to dismiss granted based on fair use).

III.   **COUNT VII SHOULD BE DISMISSED BECAUSE DEFENDANTS' FAIR USE OF PLAINTIFF GALVIN'S PHOTOGRAPH PRECLUDES ANY CIVIL CONSPIRACY CLAIM.**

To bring a claim for civil conspiracy, the plaintiff must allege "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004). Moreover, the complaint "must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Id.* at 318.

Because, as explained above, no "overt tortious or unlawful act" was committed, Plaintiff Galvin's civil conspiracy claim conclusively fails. *See Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000) ("Where . . . a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails."). In addition and in the alternative, Plaintiff Galvin's claim that each Defendant "agreed to infringe upon Plaintiff Galvin's copyright" because they (without elaboration) "agreed to send out the Flyer" constitutes merely a bald assertion of a civil conspiracy and does not allege the

specific facts required by Illinois law or the Federal Rules of Civil Procedure to plead a civil conspiracy claim. *Fritz*, 209 Ill. 2d at 318; *Indeck*, 316 Ill. App. 3d at 432 ("Characterizing a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss"); *Boothe v. Sherman*, No. 13 C 7228, 2014 WL 4362842, at *6 (N.D. Ill. Sept. 3, 2014) (quoting *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54 (1994) ("A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort.")). *See also Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 939 (7th Cir. 2012).

Accordingly, because Count VII does not plead a viable cause of action upon which relief can be granted, the Court should dismiss Count VII from Plaintiffs' Complaint.

## IV. COUNTS VIII-XIII SHOULD BE DISMISSED BECAUSE THE COMMON LAW CAUSE OF ACTION FOR MISAPPROPRIATION OF AN INDIVIDUAL'S LIKENESS WAS SUPERSEDED BY THE ILLINOIS RIGHT OF PUBLICITY ACT AND, AS SUCH, IS NO LONGER A VIABLE CAUSE OF ACTION.

The Illinois Right of Publicity Act, effective January 1, 1999, entirely superseded the common-law tort of appropriation of likeness. *See* 765 ILCS 1075/60 ("The rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act . . ."). Therefore, the common law claim for the "misappropriation of an individual's likeness" is no longer a viable cause of action in the state of Illinois. *See Maremont v. Susan Fredman Design Grp., Ltd.*, 772 F. Supp. 2d 967, 972 (N.D. Ill. 2011). It is also worth noting that even if Plaintiff Meister brought a claim under Illinois's Right of Publicity Act, the Act specifically exempts the use of a person's identity for "political campaigns," describing such use as a "non-commercial purpose[]." *See* 765 ILCS 1075/35(b)(2). Accordingly, because Counts VIII-XIII are not viable causes of action, the Court should dismiss these Counts from Plaintiffs' Complaint.

**V.      COUNTS XIV-XIX SHOULD BE DISMISSED BECAUSE DEFENDANTS'
FLYER DID NOT PORTRAY PLAINTIFF MEISTER IN A FALSE LIGHT,
DEFENDANTS' PORTRAYAL OF PLAINTIFF MEISTER WAS NOT
"HIGHLY OFFENSIVE TO A REASONABLE PERSON," DEFENDANTS DID
NOT ACT WITH ACTUAL MALICE, AND PLAINTIFF MEISTER DID NOT
PLEAD SPECIAL DAMAGES.**

To bring a false light claim, the plaintiff must demonstrate that (1) the plaintiff was
placed in a false light before the public as a result of defendant's actions, (2) the false light
would be highly offensive to a reasonable person, and (3) the defendant acted with actual malice.
*Wynne v. Loyola Univ. of Chi.*, 318 Ill. App. 3d 443, 454 (1st Dist. 2000) (affirming dismissal of
false light claim).   "Actual malice" means "with knowledge that the statements were false or
with reckless disregard for whether the statements were true or false."  *Kolegas v. Heftel Broad.
Corp.*, 154 Ill. 2d 1, 17-18 (1992).

First, Defendants did not portray Plaintiff Meister in a false light.  *See* Pl.'s Ex. B.  A
reasonable reader of the flyer would believe that the blurry picture showed a dressed-down Sam
Yingling—just at an awkward angle.  Those familiar enough with Plaintiff Meister, moreover,
would readily spot the mistake and understand it as a mistake.

Additionally, any reasonable doubt as to whether the flyer placed Plaintiff Meister in a
false light should be resolved in favor of the Defendants.   "In order to prevail on a false light
claim, the plaintiff must show that the publicity at issue is 'of and concerning' him."  *Muzikowski
v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003).   If the statements can
reasonably be construed as referring to somebody other than the plaintiff, then the statements are
not "of and concerning him," and cannot state a false light claim.  *Id.* (citing *Harte v. Chicago
Council of Lawyers,* 220 Ill.App.3d 255 (1991)).

Here, the flyer expressly and exclusively criticizes *Sam Yingling.*   In addition to the
words of the flyer making it perfectly clear that the Statement is about Sam Yingling, the

photograph itself suggests the man in the car is Sam Yingling. The man is driving a car that proudly exhibits a Sam Yingling poster. Due to the explicit references to Sam Yingling throughout the flyer, the Statement can reasonably (most reasonably) be construed as referring to Sam Yingling. Therefore, because the statement at issue can reasonably be construed as referring to somebody other than the plaintiff, the statement is not "of and concerning him," and cannot constitute a false light claim. *Muzikowski,* 322 F.3d at 927.

Second, even if Plaintiff Meister was placed in a false light, that light was not "highly offensive to a reasonable person." The only reasonably arguable "false light" in which Plaintiff Meister is placed is being portrayed as Sam Yingling. This is not highly offensive. One Illinois Democratic political candidate being portrayed as another Illinois Democratic political candidate is not offensive. Of all people, furthermore, Plaintiff Meister would seemingly take the least offense to being portrayed as Sam Yingling considering the fact that—as the Plaintiff's pleadings point out—Plaintiff Meister participated in a pro-Sam Yingling parade, riding in a Sam-Yingling marked car.

The Court should not accept Plaintiff Meister's "unwarranted inference" that the flyer portrays Plaintiff as "driving off with a carload of stolen money." *See McCullough v. Zimmer, Inc., No. 08cv1123*, 2009 U.S. Dist. LEXIS 21815, at *11 (W.D. Penn. March 18, 2009) (stating, in the context of a 12(b)(6) motion, that the court "will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations"); *In re Delorian Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). The actual flyer, included in Plaintiffs' pleadings, readily refutes this groundless assertion. *See* Pl.'s Ex. B. Understood in the context of the flyer, Defendants' use of the photograph at issue in no way suggests or implies theft or the

commission of any other crime.  *See Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982) ("[A] statement [must] be considered in context").

In fact, in no uncertain terms, the flyer—and the illustration contained therein—directly criticizes Sam Yingling's (or, by reasonable mistake, Plaintiff Meister's) fiscal irresponsibility. The small, two-page flyer is stamped with the phrases "fiscal irresponsibility" and "wasteful spending" ten times.  "Theft," "stealing," and all criminal-related words are visibly absent from the flyer.  Nothing in the picture suggests or implies that the money flying out of Sam Yingling's (or, by reasonable mistake, Plaintiff Meister's) figurative backseat was "stolen."  The picture merely illustrates and accentuates, with parody-like hyperbole, that Sam Yingling (or, by reason mistake, Plaintiff Meister) is fiscally reckless.  Portraying a politician as fiscally irresponsible is not "highly offensive to a reasonable person."  It is free speech.  It is part of the "political back and forth [that] must be adjudicated in the 'marketplace of ideas.'" *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341 (1995).  Indeed, "the law steers far clear of requiring judicial determination of political 'truth,' and does so because of the serious dangers to democracy and the political process that would result from turning the courts into 'truth squads' with respect to core political speech on matters of public concern."  Doc. No. 108, Order Granting SBA List's Renewed Motion for Summary Judgment, at 5 (internal citations omitted).

Third, even if Plaintiff Meister was placed in a false light, and even if that light was somehow "highly offensive to a reasonable person," Defendants clearly did not place Plaintiff Meister in such a light with "actual malice."  Defendants' use of a picture of Plaintiff Meister instead of Sam Yingling was clearly a mistake.  No purpose is served by including a picture of Plaintiff Meister in a flyer about Sam Yingling.  The entire flyer was dedicated to criticizing Sam Yingling and comparing him to Defendant Drobinski—Sam Yingling's opponent in the race for

Illinois state representative. Defendants had no reason to or interest in inserting a photograph of Plaintiff Meister instead of Sam Yingling. The actual and only plausible explanation is that Defendants mistook Plaintiff Meister for Sam Yingling. Such a mistake—of portraying one Democratic candidate as another respectable Democratic candidate—does not constitute an intent to depict an individual in a light "highly offensive to a reasonable person." As Plaintiff Meister's pleadings make clear, furthermore, this mistake was reasonable. Plaintiffs' Complaint points out that the photograph was taken from Sam Yingling's website and features Plaintiff Meister in a Sam Yingling-marked car, participating in a pro-Sam Yingling parade. Defendants' mistaking a blurry, odd-angle picture of Plaintiff Meister, at a Sam Yingling event, driving in a Sam Yingling-marked car, taken from Sam Yingling's website, to be Sam Yingling, is reasonable.

In addition and in the alternative, to bring a claim for false light, Plaintiff Meister must plead special damages. *Myers v. Levy*, 348 Ill. App. 3d 906, 916 (2004) (citing *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 422 (1989)). Hid did not. Plaintiff Meister's false light claims seek $150,000 in compensatory damages and $500,000 in punitive damages. *See* Compl. at pg. 11. These damages allegedly stem from the injury that the Plaintiff Meister suffered to his privacy. However, such damages are not special because the value of the injury to Plaintiff Meister's privacy is unknown and speculative. Indeed, Plaintiff Meister failed to specify how such damage to one's privacy are "actual damage[s] of a pecuniary nature." *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003) (stating, in the context of defamation and false light claims, plaintiff did not make a viable claim because he did not "itemize his losses or plead specific damages of actual financial injury.").

Defendants did not portray Plaintiff Meister in a false light. Nor did Defendants portray Plaintiff Meister in a light "highly offensive to a reasonable person." Additionally, Defendants did not intend to portray, or with reckless disregard portray, Plaintiff Meister in a false and highly offensive light. Lastly, Plaintiff Meister did not plead special damages as required by Illinois law for false light claims. Because Defendants' flyer does not satisfy any of the elements of a false light claim, Counts XIV-XIX should be dismissed from Plaintiffs' Complaint.

## VI. COUNT XX-XXV SHOULD BE DISMISSED BECAUSE DEFENDANTS' "STATEMENT" ABOUT SAM YINGLING (OR PLAINTIFF MEISTER) IN THE FLYER AT ISSUE WAS NOT DEFAMATORY, WAS CLEARY OPINION, WAS NOT MADE WITHOUT ACTUAL MALICE, AND DID NOT PRODUCE SPECIAL DAMAGES.

To bring a claim for defamation in Illinois, the plaintiff must allege facts demonstrating that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the statement to a third party, and that the publication caused damages to the plaintiff. *Stone v. Paddock Publications, Inc*., 2011 IL App (1st) 093386, ¶ 24. For public figures such as Plaintiff Meister, furthermore, the plaintiff must allege facts demonstrating actual malice. *Madison v. Frazier*, 539 F.3d 646, 657-58 (7th Cir. 2008). Lastly, for *per quod* defamation, the plaintiff must plead and prove "special damages" to recover because damage to the plaintiff's reputation will not be presumed. *Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 103 (Ill. 1996); *Maag v. Illinois Jobs, Growth and Prosperity*, 368 Ill.App.3d 844, 853 (5th Dist. 2006).

A. No Plausible Statement in Defendants' Flyer is Defamatory

Defendants' flyer is not defamatory. The only "possible" statements that the flyer could make about Plaintiff Meister is that (1) he is Sam Yingling, (2) he is fiscally irresponsible, (3) he

literally drives a car with money flying out of the backseat, or (4) he steals public money. The first two statements are not defamatory; the last two statements are not plausible.

As explained above, stating that Plaintiff Meister is Sam Yingling (whether by reasonable mistake or not) is not defamatory. Sam Yingling is a sitting Illinois state representative—one who, as the Plaintiffs' pleadings make clear, Plaintiff Meister fully endorses. Stating that Plaintiff Meister is fiscally irresponsible, furthermore, is not defamatory. It is political speech. *New York Times, Co. v. Sullivan*, 376 U.S. 254, 304-05 (1964) ("The Constitution accords citizens and press an unconditional freedom to criticize official conduct."). The other two statements—that Plaintiff Meister literally drove a car with money flying out of the back seat or that he "steals" public funds—are simply not reasonable or plausible interpretations of the flyer. Any reasonable person would readily interpret the doctored picture—especially given the particular context of the flyer as a whole and the words contained therein—as meaning "fiscally reckless." Indeed, the flyer makes perfect clear how the reader should interpret the money flying out of the backseat: as illustrating the politician's fiscal recklessness. *See* Pl.'s Ex. B (explicitly stating that Sam Yingling's "Fiscal Responsibility Went Out the Window").

### B. Defendants' Statement is Merely Opinion

Defendants' statement is clearly opinion. Mere opinion may not provide the basis of a defamation action. *J. Maki Const. Co. v. Chicago Regional Council of Carpenters*, 379 Ill.App.3d 189, 200 (2008). When a statement cannot be reasonably interpreted as stating actual facts, the statement is deemed constitutionally protected "opinion." *Kolegas*, 154 Ill.2d at 14-15. This is because "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Solaia Technology, LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 581 (Ill. 2006) (citing *Getz v. Robert Welch, Inc.*, 418

U.S. 323, 339–40 (1974)).  In determining whether a statement can be reasonably interpreted as stating an actual fact, courts will look to "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content."  *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 398 (2008).  Here, the image fails each of these inquiries because any implication of "fiscal irresponsibility" is vague, unverifiable, and non-factual in context.

First, the image (and statement contained therein) lacks a precise and readily understood meaning.  Defendants' statement is analogous to the statement at issue in *Hopewell v. Vitullo*. 233 Ill.Dec. 456, 460 (1st. Dist. 1998).  In *Hopewell*, the court found that the phrase "fired because of incompetence" does not have a precise and readily understood meaning.  *Id.* at 461. Specifically, the court stated that, although "'incompetent' [was found to be] an easily understood term, its broad scope renders it lacking the necessary detail for it to have a precise and readily understood meaning."  *Id.*  The court pointed out that "the first amendment protects loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts."  *Hopewell v. Vitullo*, 233 Ill.Dec. 456, 460 (1st. Dist. 1998). As in *Hopewell,* Defendants' statement fails to provide enough detail to have a precise and readily understood meaning and would be interpreted by reasonable readers as figurative language.  Similar to the term "incompetence," the doctored photograph invites a broad scope of interpretation lacking the necessary detail for a precise and readily understood meaning. *Hopewell*, 233 Ill.Dec. at 461.

Second, when a statement is "too broad, conclusory, and vague," it is not "objectively capable of proof or disproof."  *Rose v. Hollinger International, Inc.*, 383 Ill App. 3d 8, 18 (Ill. App. Ct. 2008).  Here, the statement implied from the image of a man driving a car with money

flying out of the backseat is simply too broad and vague to be capable of verification. *See Imperial Apparel,* 227 Ill.2d at 397–98 (2008) (citing *Troy Group, Inc. v. Tilson,* 364 F.Supp.2d 1149, 1157 (C.D.Cal.2005) (finding that defendant's characterization of parties associated with plaintiff "as the biggest crooks on the planet" was not actionable because, viewed in context, it was exaggerated, figurative and hyperbolic speech protected by the first amendment)); *Coghlan v. Beck,* 2013 IL App (1st) 120891, ¶ 40, 984 N.E.2d 132, 146 (citing *Phantom Touring, Inc. v. Affiliated Publications,* 953 F.2d 724, 728 (1st Cir.1992) (finding that defendant calling a play "a rip-off, a fraud, a scandal, a snake-oil job" was mere hyperbole and, thus, constitutionally protected)). The statement is a political criticism which, like most political barbs, cannot be conclusively verified. Indeed, such open-ended and unsettled opinion lies at the heart of all political debate.

Lastly, the statement's general literary and social context does not signal that it has factual content. "[L]iterary, public, social contexts are a major determinant of whether an ordinary reader would view an alleged defamatory statement as constituting fact or opinion." *Brennan v. Kadner,* 351 Ill.App.3d 963, 970 (Ill. App. Ct. 2004). In determining whether the context signals factual content, the court considers whether the literary context of the statement "influences the average reader's readiness to infer [the statement's] factual content." *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 865 (Ill. App. Ct. 1995). Further, courts evaluate the social context of a statement because certain kinds of speech may, by custom or convention, inform the reader's perception of whether the statement is fact or opinion. *Id.* (holding that in the context of employee evaluations, comments generally communicate subjective opinions of performance).

Here, the social and literary context of the statement at issue directly influences the average reader's readiness to infer factual content. The statement at issue was made within a direct-mail political flyer. By long-standing custom and convention, recipients of such political mail fully anticipate and understand such material to be non-factual, politically-charged opinion. *See Brennan,* 351 Ill. App. 3d at 970 (quoting *Gregory v. McDonnell Douglas Corp.,* 17 Cal.3d 596, 601 (1976) ("[W]here potentially defamatory statements are published in a public debate . . . or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.")); *Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 138 (2007) ("[A] reasonable reader would likely be skeptical of statements made or repeated by representatives of one campaign that attack a political opponent.").

Furthermore, the literary context surrounding the picture—the juxtaposition of political priorities between two candidates and the theme of fiscal irresponsibility—readily undercuts the supposed "factual nature" of the alleged "theft" accusation implied by the doctored photograph. *See Brennan*, 351 Ill. App. 3d at 970 ("Given the context and the other surrounding passages in the column, a reasonable reader would not have taken the statement as a literal assertion that plaintiff had actually committed mail fraud."). *See also Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 13–14 (1970) (finding that characterization of a developer's negotiating position as "blackmail" was not defamatory and under the circumstances did not suggest commission of a crime). The political campaign context of the flyer, coupled with its literary context, directly causes the average reader to interpret the statement at issue as mere opinion.

As mere opinion, Defendants' statement is constitutionally protected and not actionable.

C.      Defendants Lacked Actual Malice

Since the Statement in the flyer was directed at a public figure, an Illinois state representative (or the Illinois Democratic candidate for the United States Senate), Plaintiff Meister must show actual malice behind the alleged defamatory statements. *Madison v. Frazier*, 539 F.3d 646, 657 (7th Cir. 2008). In order to establish actual malice, the plaintiff must show that "(1) the utterance was false and (2) it was made with knowledge of its falsity or in reckless disregard of whether it was false or true." *Id.* The reckless disregard of the truth does not require an objective inquiry of a reasonable man's mental state but rather a subjective inquiry of the defendant's mental state. *Id.* To demonstrate a reckless disregard of the truth, the plaintiff must present "*sufficient evidence* for the court to conclude that the defendant published the defamatory statements despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." *Id.* at 658.

Here, Defendants' use of a picture of Plaintiff Meister (instead of Sam Yingling) was clearly a mistake. No purpose is served by including a picture of Plaintiff Meister in a flyer about Sam Yingling. The entire flyer was dedicated to criticizing Sam Yingling and comparing him to Defendant Drobinski—Sam Yingling's opponent in the race for Illinois state representative. Defendants did not intentionally insert a photograph of Plaintiff Meister instead of Sam Yingling. The actual and only plausible explanation is that Defendants mistook Plaintiff Meister for Sam Yingling. Such a mistake—of portraying one republican candidate as another respectable republican candidate—does not amount to an actual intent to defame another.

As Plaintiff Meister's pleadings make clear, furthermore, this mistake was reasonable. Plaintiffs' Complaint explicitly points out that the photograph at issue was taken from Sam Yingling's website and features Plaintiff Meister in a Sam Yingling-marked car, participating in

a pro-Sam Yingling parade. Defendants' mistaking a blurry, odd-angled picture of Plaintiff Meister, at a Sam Yingling event, driving in a Sam Yingling-marked car, taken from Sam Yingling's website, to be Sam Yingling, is reasonable. Plaintiffs' Complaint, furthermore, utterly fails to provide any facts concerning the Defendant's knowledge or awareness of the statement's alleged falsity. Plaintiff Meister's conclusory assertion that Defendants "knew the statement was false" is not "sufficient evidence" to establish actual malice. *Madison*, 539 F.3d at 657-58.

Accordingly, because Defendants' use of the Plaintiff Meister's picture was a reasonable mistake, such use does not meet the "actual malice" standard. Without actual malice, Plaintiff Meister's defamation claim necessarily fails.

D.      Plaintiff Meister Failed to Plead Special Damages

Plaintiff Meister did not plead special damages as required by law. Defamatory statements can be considered defamatory *per se* or *per quod*. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006). A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation can be presumed. *Id.* The plaintiff does not need to plead actual damages for *per se* defamation claims. *Id.* Alternatively, a statement is defamatory *per quod* if the defamatory character is not obvious and apparent on its face; in that case, damage to the plaintiff's reputation cannot be presumed and the plaintiff must plead and prove special damages in order to recover. *Id.*

To constitute defamation *per se*, the statements must fall under one of four categories: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing his or her employment duties; or (4) person lacks ability or

otherwise prejudices that person in his or her profession.  *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 10 (1992).  For a defamation *per se* cause of action, "precision and particularity are also necessary so that the defendant may properly formulate an answer and identify any potential affirmative defenses."  *Green v. Rogers*, 234 Ill.2d 478, 492 (2009).

Plaintiffs' Complaint does not on its face allege a defamation *per se* cause of action. Even if it did, however, such claims must be dismissed for several reasons.  First, the heightened level of particularity and precision required for such claims is clearly absent from Plaintiffs' Complaint.  *See Green,* 234 Ill.2d at 494 (finding a lack of particularity where plaintiff did not allege what specific conduct by the defendant constituted the claim).  Second, Plaintiff Meister does not assert his defamation claim as falling under any specific defamation *per se* categories. Specifically, Plaintiff Meister does not directly plead that Defendants' flyer stated that Sam Yingling (or, by a reasonable mistake, Plaintiff Meister) committed a crime (i.e., stole money).  Instead, Plaintiffs' Complaint merely avers that Defendants' flyer at issue depicts "Plaintiff Meister driving off with a carload of stolen money from the Illinois State Capitol." Compl. at pg. 24.  It does not specifically aver that Defendants' flyer states or implies that Plaintiff Meister actually stole the money, nor does Plaintiffs' Complaint specifically aver that Defendants' flyer states or implies that Plaintiff Meister knew the money in his car was stolen.

Even if Defendants' statement could plausibly be interpreted to mean that Plaintiff Meister literally drives a car or has driven a car with money flying out of the back seat or that he "steals" public funds, Defendants' statements are nevertheless reasonably capable of an innocent construction.  *Kolegas,* 154 Ill. 2d at 11.  Under the innocent-construction rule, the court considers a written or oral statement in context, "giving the words and implications therefrom their natural and obvious meaning."  *Id.*  When a statement "'may reasonably be innocently

interpreted,'" the court will not regard the statement as defamatory *per se*. *Id.* Whether a statement may be a reasonable innocent construction is a question of law for the court to decide. *Id.*

Here, the Defendants' statement at issue is readily and reasonably capable of an innocent construction. The flyer at issue explicitly states that Sam Yingling's "Fiscal Responsibility Went Out the Window" while criticizing his "Wasteful Spending." Indeed, the flyer mentions the phrases "fiscal responsibility" and "wasteful spending" ten times in two pages. The doctored photograph clearly and unequivocally criticizes Sam Yingling's (or, by reasonable mistake, Plaintiff Meister's) fiscal irresponsibility and wasteful spending. No reasonable person would interpret or understand the flyer as claiming, suggesting, or implying that Sam Yingling (or by mistake, Plaintiff Meister) was somehow "driving a car of stolen money" or engaged in the "theft of public funds." The natural and ordinary meaning of a picture depicting cash flying out of the car, when accompanied by phrases like "fiscally irresponsibility" and "wasteful spending"— within a political flyer—is not the theft of public funds. Instead, such an illustration is readily and most reasonably interpreted as suggesting that Mr. Yingling (or, by reasonable mistake, Plaintiff Meister) spends the public money indiscriminately and irresponsibly. Indeed, Defendants' Statement is not only "reasonably capable of an innocent construction," the innocent construction is the *most* reasonable construction. The only other "reasonable construction" of the Statement is that it was about Sam Yingling and not Plaintiff Meister.

Accordingly, Defendants' Statement does not constitute *per se* defamation. Plaintiff Meister fails to specifically, and with the requisite level of precision and particularity, plead any defamation *per se* claim. The only arguable *per se* claim—that Defendants accused Plaintiff Meister of "driving off with a carload of stolen money"—does not constitute an actual crime.

Moreover, even if Plaintiff Meister pled a sufficient *per se* claim, the two *most reasonable* constructions of the Statement do not constitute defamation—*per se* or otherwise.

Finally, even if the Statement constitutes *per quod* defamation, Plaintiff Meister must plead special damages. For all defamation *per quod* claims, the plaintiff must plead and prove special damages. *Naleway v. Agnich*, 386 Ill.App.3d 635, 638-639 (2nd Dist. 2008). *See also Maag v. Illinois Jobs, Growth and Prosperity*, 368 Ill.App.3d 844, 853 (5th Dist. 2006) (special damages are "actual damages of a pecuniary nature"). Plaintiff Meister seeks $150,000 in compensatory damages and $150,000 in punitive damages. *See* Compl. at pg. 24. These damages allegedly stem from the injury that the Plaintiff Meister suffered to his reputation. *Id.* at ¶¶142, 148, 154, 160, 166, 172. However, such damages are not special because the value of the injury to Plaintiff Meister's reputation is unknown and speculative. Plaintiff Meister did not specify how such damage to one's reputation are "actual damage[s] of a pecuniary nature." *Maag*, 368 Ill.App.3d at 853. *See also Muzikowski*, 322 F.3d at 927 (stating, in the context of defamation and false light claims, plaintiff did not make a viable claim because he did not "itemize his losses or plead specific damages of actual financial injury."). Without special damages, the defamation *per quod* claims must fail and should be dismissed.

Therefore, because Defendants made no plausible defamatory statement, because Defendants' Statement was merely opinion, because Defendants lacked "actual malice" in making the Statement, and because the Complaint did not allege special damages, Plaintiff Meister's defamation claims necessarily fails. The Court should dismiss Counts XX-XXV swiftly and definitively. *See Imperial Apparel*, 227 Ill. 2d at 400 ("[I]n first amendment jurisprudence . . . ambiguity yields fear of liability and fosters self-censorship, the effects of which chill the free flow of protected expression.").

**VII.  COUNT XXVI SHOULD BE DISMISSED FOR THE SAME REASONS COUNTS XX-XXV SHOULD BE DISMISSED—THERE WAS NO OFFENSE FOR DEFENDANTS TO ALLEGEDLY CONSPIRE TO COMMIT.**

To bring a claim for civil conspiracy, the plaintiff must allege "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act."  *Fritz*, 209 Ill. 2d at 317. Moreover, the complaint "must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Id.* at 318.

Because, as explained above, no "overt tortious or unlawful act" was committed, Plaintiff Meister's civil conspiracy claim conclusively fails.  *See Indeck*, 316 Ill. App. 3d 416 at 432 ("Where . . . a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails.").  In addition and in the alternative, Plaintiff Meister's claim that each Defendant "by mailing out the Flyer . . . agreed to tortiously invade Plaintiff Meister's privacy" constitutes merely a bald assertion of a civil conspiracy and does not allege the specific facts required by Illinois law and the Federal Rules of Civil Procedure to plead a civil conspiracy claim.  *Fritz*, 209 Ill. 2d at 318; *Indeck*, 316 Ill. App. 3d at 432 ("Characterizing a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss"); *Boothe v. Sherman*, No. 13 C 7228, 2014 WL 4362842, at *6 (N.D. Ill. Sept. 3, 2014) (quoting *Adcock,* 164 Ill.2d 54) ("A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort.")).  *See also Indep. Trust Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 939 (7th Cir. 2012).

Accordingly, because Count XXVI does not plead a viable cause of action upon which relief can be granted, the Court should dismiss Count XXVI from Plaintiffs' Complaint.

## **CONCLUSION**

This case exemplifies the importance of the 12(b)(6) motion to dismiss. Plaintiffs' Complaint, which is nothing more than political retaliation in the form of a frivolous lawsuit, should be dismissed immediately and entirely. As thoroughly explained above, the Complaint includes no viable causes of action. Based on Plaintiffs' own pleadings, each count is wholly and necessarily deficient. For those reasons, the Defendants respectfully move this Court to dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

DEFENDANTS,

ILLINOIS REPUBLICAN PARTY; ILLINOIS HOUSE REPUBLICAN ORGANIZATION; RODERICK DROBINSKI; FRIENDS OF ROD DROBINSKI, AND, MAJORITY STRATEGIES, INC.

Dated: March 3, 2015

By: /s/ Daliah Saper
Daliah Saper
Saper Law Offices, LLC
505 N. LaSalle Suite 350
Chicago, Illinois 60654
Attorney No.: 6283932
ds@saperlaw.com
(312) 527-4100